José Manuel Pietri Mejía, Plaintiff and Appellee, *v.* Rosario Bacó Polidori, Defendant and Appellant.

No. 7074. Argued June 24, 1937.—Decided July 24, 1937.

*Oscar Souffront* for appellant. *Leopoldo Tormes García* for appellee.

Mr. Justice Travieso delivered the opinion of the Court.

In a divorce suit brought by José Manuel Pietri Mejía against his wife Rosario Bacó Polidori, judgment was rendered sustaining the complaint in its first cause of action, and in consequence thereof, the matrimonial ties existing between the plaintiff and the defendant were dissolved. The latter took the present appeal and charged the lower court with six errors all of which refer to the weighing of the evidence and the credibility of the witnesses.

Pietri alleged in his first cause of action that he married the defendant in the town of San Germán on June 2, 1925, and that during the last four years his wife has observed a cruel and unjust conduct towards him, refusing to talk to him and calling him ''scoundrel, shameless, dog and ill-born both in private and in the hearing of strange persons, vio-

lating all her duties in the home . . . striking him . . . . insulting and abusing the mother of plaintiff in his presence, to the extreme of striking her''.

He alleged in his second cause of action that the defendant, on several occasions prior to August 12, 1934, had sexual intercouse with Evelio Maldonado, and that on August 12, 1934, the plaintiff and other persons surprised her at the beach known as Salinas, of the Municipality of Guánica, at the precise moments that she was having such sexual intercouse with said Evelio Maldonado, who was not her husband.

The trial of the case lasted two days and the transcript of the evidence consists of 148 pages, which we have read carefully. The lower court found that the following facts had been proved, which we copy from the opinion it rendered:

That the plaintiff José Manuel Pietri and the defendant Rosario Bacó Polidori were married at San Germán on June 2, 1925, of which marriage no children were born, that since the plaintiff married the defendant and until the year 1932, when plaintiff's father died, the former was an employee of his father as foreman of his properties, earning a salary of $30 a month, and lived with his wife in different properties, that the plaintiff, since the year 1925, suffered from sprue, having been treated by Dr. Arrache, who testified that the plaintiff also had symptoms of mental anguish and very nervous in part due to the sprue, and that the plaintiff, since the year 1932, has become much better. That the plaintiff and the defendant lived together since they were married until June 4, 1932, when the plaintiff for the reasons he mentioned in a letter addressed to defendant's mother (see Defendant's Exhibit 2) left the conjugal home, the defendant having then gone to live with her relatives in Adjuntas and Yauco; that the decision reached by the plaintiff to separate from the defendant was the result of the cruel treatment and grave injuries by word and by actions which he had received from the defendant for several years, consisting of offensive words and phrases, and having struck him, to the extreme that the plaintiff confessed in court that he was afraid of the defendant, which facts contributed to make worse the bad health of the plaintiff. The evidence of the plaintiff as a whole deserved more credit to the court, and his own declaration, which proved that the plaintiff is a man of weak character and frail physical constitution and of very little spirit whilst

the defendant proved to be a woman of a dominant, lively and strong character. The court is convinced that the draft of the letter (Defendant's Exhibit 1) was written by the plaintiff at the request of and compelled by the defendant and that the attitude which he first adopted in denying that he had written it was due to the shame of having to admit that he wrote it, as it was addressed to his mother.

"The mind of the trial judge could not help being strongly impressed and convinced that the marriage life which existed between the parties up to the year 1932, was one of constant quarrels, disputes and fights, caused by the bad temper and jealousy of the defendant . . .

"    .    .    .    .    .    .    .    .    .    .    .

"As to said second cause of action, the court states that the evidence offered has not convinced it that the defendant committed adultery w'th Evelio Maldonado on August 12, 1934, even though it was proved, beyond all doubt, as the defendant herself admitted, that she had gone to the 'Salinas', of Guánica, on said night with Maldonado and Teresa Santos; that the conduct of the defendant in going at night to a solitary place and of such general bad reputation as it was testified said place the "Salinas" was, with a man and another woman, whose actions, conduct and matter of testifying deserve little credit and respect from the court; the conduct of the defendant, we say, is far from helping the good reputation of a lady who values her good name, specially at the time when her husband was seeking a divorce. Plaintiff's evidence as to this second cause of action has also deserved more credit to the court, but it does not consider it sufficient to establish a case of adultery, although it does establish one of impardonable indiscretion of a wife, which would be equivalent to cruel treatment and grave injuries in some jurisdictions of the United States. The court states that the defendant as well as Evelio Maldonado lied in their statements when they said that they had not spoken to each other in Guánica or Adjuntas before the night of August 12, 1934, as it may be seen from their contradictions as the same appear in the transcript of the evidence, pages 234 and 259.

"Nor has it been proved that the defendant committed adultery with Evelio Maldonado before said night, for the evidence of what happened at the property of plaintiff's father happened several years before and by itself did not establish adultery, and furthermore, this would have been condoned by the subsequent conduct of the plaintiff in continuing to live with the defendant".

The defendant does not claim that the lower court acted moved by passion, prejudice, or partiality. In these circumstances, the constant and well established rule of this Supreme Court has been not to disturb the decision, unless the record shows manifest error in the weighing of the evidence, which is very far from being the case now. *E. Solé & Co. S. en C.* v. *Pedrosa,* 49 P.R.R. 555; *Reyes* v. *López,* 48 P.R.R. 89; *López* v. *Andrades,* 47 P.R.R. 293; *Amador* v. *Navarro,* 46 P.R.R. 509; *Molina* v. *Rodríguez,* 40 P.R.R. 661; *Casanovas* v. *Ponce Electric Co.,* 38 P.R.R. 113; *Palacios* v. *Arsuaga,* 37 P.R.R. 270; *Franceschi* v. *Fournier,* 37 P.R.R. 151; *Díaz* v. *Heirs of Cintrón,* 35 P.R.R. 579.

The trial courts hear the witnesses testify; they can appreciate their gestures and the manner in which they conduct themselves during the course of the examination to which the attorneys on both sides subject them. Appellate courts, on the contrary, lack those opportunities to reach the truth of the facts. A transcript of the evidence or a statement of the case must necessarily lack those signs so important to determine whether or not the statements made by a witness or the stand are true. Hence the wisdom of the rule.

We have carefully studied the transcript of the evidence and have been unable to find in it any error which can be imputed to the lower court. Its findings of fact are amply supported by the evidence which was introduced before it. It is true that there are contradictions in the testimony of the principal witnesses, and, generally, a conflict between the evidence of the plaintiff and that of the defendant.

But the court *a quo,* in the exercise of its discretionary power, adjusted this conflict in favor of the appellee and rejected the statements of those witnesses which did not deserve credit.

The judgment appealed from must be affirmed.

Mr. Justice Córdova Dávila took no part in the decision of this case.